# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 16-580V**
Filed: April 8, 2019

* * * * * * * * * * * * * * * *
DOLORES SMOOT, * UNPUBLISHED
Petitioner,
v. * Decision on Interim Attorneys' Fees and Costs; Denial; Reasonable Basis
SECRETARY OF HEALTH AND HUMAN SERVICES,
Respondent.
* * * * * * * * * * * * * * * *

*John Howie, Jr., Esq.*, Howie Law, PC, Dallas, TX, for petitioner.
*Althea Davis, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On May 16, 2016, Dolores Smoot ("Ms. Smoot," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] *See* Petition ("Pet."), ECF No. 1. Petitioner alleges that she developed neuromyelitis optica ("NMO") as a result of receiving an influenza vaccination on November 1, 2013. *See* Amended Petition ("Am. Pet."), ECF No. 37. Petitioner has requested an award of interim attorneys' fees and costs. Petitioner's Motion is hereby **DENIED**.

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

On May 16, 2016, petitioner filed her Petition, alleging that she received a flu vaccination on November 1, 2013, which caused her to suffer from transverse myelitis ("TM"). Pet. at 1, 12, ECF No. 1. Petitioner filed an affidavit, medical records, and a Statement of Completion on May 17, 2016. Petitioner's Exhibits ("Pet. Ex.") 1, 12-13, ECF No. 5; Pet. Ex. 2-11, ECF No. 6; Statement of Completion, ECF No. 7.

During the initial status conference on July 14, 2016, petitioner's counsel confirmed that he was in the process of obtaining supplemental medical records; petitioner was ordered to file outstanding medical records and an amended statement of completion by September 12, 2016. Scheduling Order at 1, ECF No. 10. Respondent was ordered to file a status report thereafter. *Id*.

Petitioner filed additional medical records throughout August and September before filing a Statement of Completion on September 12, 2016. *See* Pet. Ex. 14-15, ECF No. 11; Pet. Ex. 16, ECF No. 12; Pet. Ex. 17, ECF No. 14; Pet. Ex. 18, ECF No. 15; Statement of Completion, ECF No. 16. Respondent filed a status report ("Resp. S.R.") on October 12, 2016, requesting a deadline to file his Rule 4(c) Report. Resp. S.R. at 1, ECF No. 17.

Respondent filed his Rule 4(c) Report ("Resp. Rpt.") on December 2, 2016, indicating that this matter was not appropriate for compensation. Resp. Rpt., ECF No. 18. Respondent noted that, at the time that petitioner received the allegedly causal vaccination, her medical history was significant for supraventricular tachycardia requiring a catheter ablation procedure, hypertension, migraines, and rotator cuff syndrome. *Id*. at 1-2.

During a status conference held on February 1, 2017, respondent's counsel requested that petitioner's expert report address the following items:

> (1) which injury petitioner is alleging, transverse myelitis or neuromyelitis optica; (2) the relapsing-remitting nature of petitioner's alleged injury in contrast with the monophasic presentation of transverse myelitis; (3) petitioner's receipt of influenza and pneumococcal vaccinations along with having a "surgical" procedure of cardiovascular ablation at the same time; and (4) how the influenza vaccine would be the cause of the alleged injuries and not the pneumococcal vaccination, the cardiovascular ablation, or a combination of any of the three.

Scheduling Order at 1, ECF No. 22. Petitioner was ordered to file an expert report by May 2, 2017. *Id*.

On April 4, 2017, petitioner filed an unopposed Motion for Extension of Time until June 2, 2017, to file her expert report, which was granted. ECF No. 23; Non-PDF Order, dated Apr. 4, 2017. On April 10, 2017, petitioner filed additional medical records. Pet. Ex. 19-21, ECF No. 24. On June 1, 2017, petitioner filed an unopposed Motion for Extension of Time until July 6, 2017, to file her expert report, which was granted. ECF No. 25; Non-PDF Order, dated June 1, 2017.

Petitioner filed an expert report and supporting medical literature from Dr. Steinman, a neurologist, on July 6, 2017. Pet. Ex. 22-23, ECF No. 26; Pet. Ex. 24-28, ECF No. 27; Pet. Ex. 29-33, ECF No. 28; Pet. Ex. 34-37, ECF No. 29; Pet. Ex. 38-42, ECF No. 30; Pet. Ex. 43-46, ECF No. 31.

Following a request for an extension of time ("Resp. Motion"), which was granted, respondent filed a status report ("Resp. S.R.") on October 20, 2017, advising that respondent was in the process of obtaining expert reports. Resp. Motion, ECF No. 32; Non-PDF Order, dated Sept. 5, 2017; Resp. S.R. at 1, ECF No. 34.

Following a second request for an extension of time ("Resp. 2nd Motion"), which was granted, respondent filed expert reports and supporting medical literature from Dr. Donofrio, a neurologist, and Dr. Whitton, an immunologist, on February 12, 2018. Resp. 2nd Motion, ECF No. 35; Non-PDF Order, dated Jan. 10, 2018; Resp. Ex. A, C, ECF No. 36.

A status conference was held in April 12, 2018. During the conference, it was noted that both Dr. Steinman and Dr. Donofrio agreed that petitioner's alleged injury fit the criteria for NMO rather than TM. Scheduling Order at 1, ECF No. 37. Petitioner's counsel then confirmed that, since the Petition was filed, petitioner had received an official diagnosis of NMO; petitioner intended to amend the Petition to reflect the change in her diagnosis. *Id*. Counsel for both parties were encouraged to review the decision issued in *Calise v. Sec'y of Health & Human Servs*., No. 08-865V, 2011 WL 1230155, at *3 (Fed. Cl. Spec. Mstr. Mar. 14, 2011), as it was noted to be very similar to the instant matter, with the exception that the petitioner in *Calise* had sero-positive NMO and the petitioner in the instant matter has sero-negative NMO. *Id*. Petitioner was advised that she needed to provide an explanation for what it meant to have sero-negative NMO, and "how petitioner's lack of elevated inflammatory markers or any indication of immune response" affected Dr. Steinman's theory. *Id*. Petitioner was ordered to file an amended petition and a supplemental expert report from Dr. Steinman. *Id*.

On May 14, 2018, petitioner filed an Amended Petition alleging that the influenza vaccination she received on November 1, 2013 caused her to develop NMO. Am. Pet. at 1, ECF No. 37. On June 11, 2018, petitioner filed a supplemental expert report and supporting medical literature from Dr. Steinman. Pet. Ex. 48-49, ECF No. 39; Pet. Ex. 50-55, ECF No. 40; Pet. Ex. 56-61, ECF No. 41.[3] Respondent was ordered to file responsive expert reports by August 13, 2018. Non-PDF Order, dated June 14, 2018.

Following an unopposed Motion for Extension of Time, which was granted, respondent filed a responsive expert report from Dr. Whitton on October 12, 2018. Motion, ECF No. 44; Non-PDF Order, dated Aug. 2, 2018; Resp. Ex. E, ECF No. 48. After reviewing Dr. Whitton's responsive report, I issued an order for Dr. Steinman to file a supplemental expert report. Scheduling Order at 1, ECF No. 49. I noted that Dr. Steinman relied on the theory of molecular

[3] On June 25, 2018, petitioner filed a Motion to Strike Pet. Ex. 50, an article of medical literature. Motion, ECF No. 42. This was granted. Order, ECF No. 43. On September 28, 2018, petitioner filed a Motion to Strike Pet. Ex 48, Dr. Steinman's supplemental expert report. Motion, ECF No. 45. This was granted. Order, ECF No. 46. Dr. Steinman's supplemental expert report was refiled as Pet. Ex. 62. ECF No. 47.

mimicry to explain how an influenza vaccine could cause seronegative NMO. *Id*. In support of this theory, Dr. Steinman pointed to "blast" searches identifying homologous proteins in the flu vaccine and myelin. *Id*. Dr. Whitton criticized this approach, opining that homologies are common, and questioning Dr. Steinman's search methodology. *Id*. Most significantly, Dr. Whitton pointed out that, while Dr. Steinman had identified several homologies between the flu vaccine and myelin, he had no explained how these homologies triggered cross-reactive immune responses that would result in the development of NMO. *Id*. Petitioner was advised that Dr. Steinman's supplemental report should contain a thorough explanation of how the homologies between the flu vaccine and myelin resulted in the development of NMO. *Id*.

Petitioner filed two supplemental reports from Dr. Steinman and supporting medical literature on December 10 and 14, 2018. *See* Pet. Ex. 63-64, ECF No. 50; Pet. Ex. 65-66, ECF No. 51.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on January 23, 2019. ECF No. 52. Petitioner then filed a Motion to Strike her application for interim fees, explaining that it had been filed in the wrong matter. ECF No. 53. Petitioner's Motion to Strike was granted. ECF No. 54.

On January 24, 2019, petitioner filed the instant Motion for Interim Attorneys' Fees and Costs ("Mot. Int. Fees"). ECF No. 55. Petitioner requests attorneys' fees in the amount of $45,952.70, and attorneys' costs in the amount of $22,169.32, for a total amount of $68,122.02. *Id.* at 5. In accordance with General Order #9, petitioner's counsel represents that petitioner has not incurred any out-of-pocket expenses. *Id*. at 12.

On February 8, 2019, respondent filed a response to petitioner's motion. Response, ECF No. 56. Respondent "defers to the Special Master to determine whether or not petitioner met the legal standard for an interim fees and costs award" as well as whether petitioner has met "the statutory requirements for an award of attorney's fees and costs…" Response at 2. Respondent provided no specific objection to the amount requested or hours worked, but instead, "respectfully recommend[ed] that the Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id*. at 3.

On February 11, 2019, petitioner filed a reply. Reply, ECF No. 57. Petitioner stated that she had "inadvertently…failed to file a complete copy of her expense ledger and supporting documents" and had attached a "true and correct copy" of her expenses and documentation to her reply. Reply at 1.

A Rule 5 status conference was scheduled for February 27, 2019; however, it was determined that more information was needed before the Rule 5 conference could be held. Scheduling Order at 1, ECF No. 58. During the conference, I noted that, in addition to IgG-negative NMO, petitioner had also been diagnosed with lupus, rheumatoid arthritis, and mixed connective tissue disease ("MCTD"). *Id.* I asked counsel whether petitioner intended for her vaccine claim to encompass her other autoimmune diseases in addition to NMO. *Id*. Further review of petitioner's records indicated that it is unclear which conditions petitioner suffers from. *Id*. Petitioner was ordered to file complete rheumatology records, including records documenting her diagnosis of

rheumatoid arthritis and lupus, and all records relating to the diagnosis and treatment of her MCTD. *Id*. at 2. Petitioner was also ordered to file a status report detailing which conditions she suffers from and which conditions are being claimed as caused by the influenza vaccine, or if only NMO is being. *Id*.

## II. Applicable Law and Analysis

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

Respondent indicated that it was left to the special master's discretion as to whether petitioner had met "the statutory requirements for an award of attorney's fees and costs…", presumably referring to the requirements of good faith and reasonable basis. *See* Response at 2.

Good faith is a subjective inquiry that questions whether petitioner's counsel exercised adept professional judgement in determining whether a petitioner may be entitled to compensation. *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). In the absence of a showing of bad faith, petitioners in the Vaccine Program are "entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs*., 36 Fed. Cl. 114, 121 (1996). Petitioner has made no showing of bad faith; therefore, I presume that petitioner has brought this claim in good faith.

Reasonable basis is an objective standard determined by evaluating the sufficiency of the medical records in petitioner's possession at the time the claim is filed. "Special masters have historically been quite generous in finding reasonable basis for petitions." *Turpin v. Sec'y of Health & Human Servs*., No. 99-564V, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). However, the Federal Circuit recently denied an award of attorney's fees based on petitioner's lack of reasonable basis. *See Simmons v. Sec'y of Health & Human Servs*., 875 F. 3d 632, 636 (Fed. Cir. 2017). In *Simmons*, the Federal Circuit determined that petitioner lacked reasonable basis for filing a claim when, at the time of filing: (1) petitioner's counsel failed to file proof of vaccination, (2) there was no evidence of a diagnosis or persistence injury allegedly related to a vaccine in petitioner's medical records, and (3) the petitioner had disappeared for approximately two years prior to the filing of the petition and only resurfaced shortly before the status of limitations deadline on his claim expired. *See id*. at 634-35. The Federal Circuit specifically stated that the reasonable basis inquiry is objective and unrelated to counsel's conduct prior to filing a claim. The Court consequently affirmed the lower court's holding that petitioner's counsel lacked reasonable basis in filing this claim based on the insufficiency of petitioner's medical records and proof of vaccination at the time the petition was filed. *Id*. at 636.

In light of *Simmons*, the Court of Federal Claims determined, "[I]n deciding reasonable basis[,] the Special Master needs to focus on the requirements for the petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. . . Under the objective standard articulated in Simmons, the Special Master

should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted." *Santacroce v. Sec'y of Health & Human Servs*., No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). When evaluating a case's reasonable basis, petitioner's "burden [in demonstrating reasonable basis] has been satisfied . . . where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Id*. Moreover, the special master may consider various objective factors including "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs*., 138 Fed. Cl. 282, 289 (2018).

In her application for interim fees, petitioner submitted that she has met the reasonable basis requirement by virtue of the multiple expert reports authored on her behalf by Dr. Steinman. Mot. Int. Fees at 2. Petitioner is correct that an expert opinion supported by medical literature bolsters the basis for a claim. However, as discussed during a recent status conference, the medical records are incomplete, and therefore, petitioner's expert opinions are not based on a comprehensive record.

Petitioner's counsel is currently working to acquire the outstanding medical records and address other issues raised by respondent and the undersigned. In the setting of petitioner's complicated medical history and serious comorbidities, reasonable basis cannot be determined until the medical records are complete and the experts have had the opportunity to provide opinions based on the totality of the record.

Once the entitlement phase of this matter has concluded, petitioner may file an application for attorneys' fees and costs, at which time reasonable basis will be determined.

Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **DENIED**. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.